IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BEN N. BROWN, SR. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | C.A. NO. 4:08-CV-00413 |
| | § | |
| SHELL OIL COMPANY, SHELL | § | |
| CHEMICAL, L.P., RADIATOR | § | |
| SPECIALTY COMPANY, AND JOHN | § | |
| DOES 1 THROUGH 250, INCLUSIVE, | § | |
| | § | |
| *Defendants.* | § | |

**SHELL DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY OF
PLAINTIFF'S EXPERT MELVYN KOPSTEIN**

Shell Defendants file this Motion to Exclude the Testimony of Plaintiff's Expert Melvyn Kopstein, PhD.

**I.
SUMMARY OF THE ARGUMENT**

Defendants Shell Oil Company and Shell Chemical, L.P. (collectively Shell Defendants) challenge the scientific reliability of the expert opinion of Melvyn Kopstein PhD. Dr. Kopstein made a serious methodological mistake when he based his benzene exposure opinion on inapplicable data instead of the exposure data produced by the Shell Defendants that relates specifically to Plaintiff Ben N. Brown, Sr. Dr. Kopstein also offers improper opinions as to the knowledge and "callous disregard" of Shell Defendants which are not expert opinions pursuant to Federal Rule of Evidence 702. Consequently, his opinions are neither relevant nor reliable under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), *Allen v. Pennsylvania*

*Engineering Corp.*, 102 F.3d 194 (5th Cir. 1996) and *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347 (5th Cir. 2007) and should be excluded.

## II.
## NATURE AND STAGE OF THE PROCEEDING

In his First Amended Complaint, Plaintiff alleges that Shell Defendants manufactured, sold, or distributed harmful products which caused his multiple myeloma. *See* R. Doc. 5. Specifically, Plaintiff's tort claims are negligence and product liability under Louisiana law, and strict product liability under the Restatement (Second) of Torts. *See* R. Doc. 5, paragraph 11.

On January 23, 2009, Plaintiff filed an opposed Motion for Leave to Amend his complaint to add new parties and to plead a fundamentally different case with new claims. Shell Defendants filed a Response to Plaintiff's Motion for Leave to Amend on February 10, 2009. This Court has not ruled on Plaintiff's opposed Motion for Leave to Amend.

## III.
## STATEMENT OF MATERIAL FACTS

Plaintiff is a 66 year old man who was diagnosed on or about February 3, 2007 with multiple myeloma. *See* R. Doc. 5, paragraph introduction; Exhibit A, Jan. 7, 2009 10:13-17, exhibit 1 to depo. (Plaintiff's date of birth redacted). Plaintiff alleges that his multiple myeloma was caused by occupational exposure while he was working as an oil maintenance man and lease operator for Shell Oil Company and Shell Offshore Inc. *See* R. Doc. 56, paragraph 4; R. Doc. 56 attachment 1, paragraph 8. Between 1968 and 1992, for approximately 24.5 years, Plaintiff worked for Shell Oil and Shell Offshore in the Outer Continental Shelf, in Louisiana waters. *See* R. Doc. 56, paragraph 4; R. Doc. 56 attachment 1, paragraph 8. During those 24.5 year, Plaintiff worked as follows:

- from 1968 to 1969 (one year) as a laborer in the oil fields also referred to as "maintenance man A"

- from 1969 to 1974 (5 years) for three years as a "maintenance man B" on a spud barge and for two years as a paraffin cutter on a jack up barge
- from 1974 to 1990 (16 years) he worked as a lease operator in charge of fixed platforms
- from 1990-1992 (one year) as an office assistant.

*See* R. Doc. 56, paragraph 4; R. Doc. 56 attachment 1, paragraph 8; Exhibit A, Jan. 7, 2009, 50:9-14, exhibit 1 to deposition.

Specifically, Plaintiff alleges that he was exposed to "Crude Oil, Crude Oil and natural gas associated produced water, liquid condensate, waxes, tars, sands, scale, solvents, reformats, raffinates, Liquid Wrench, Naptha, Ed-40, N.O.R.M. (Naturally Occurring Radioactive Materials), radiation from examination of steel tubular goods and pipes, structures, etc., paints asphalt paints and mastics, adhesives, glues and anti-corrosion materials" which caused his multiple myeloma. *See* Exhibit F, Response to Interrogatory 13.

On October 17, 2008, before Dr. Kopstein issued opinions regarding Plaintiff's alleged benzene exposure, Shell Defendants produced documents, Bates numbered SHELL-BBROWN 000112 – 000259 which are exposure monitoring summaries at Plaintiff's workplace. This data was not referenced by Dr. Kopstein in his expert report.

In support of their Brief, Shell Defendants attached and incorporate the following exhibits:

Exhibit   A:   Excerpts of Plaintiff's Deposition from January 7, 2009

Exhibit   B:   Report of Melvyn Kopstein, PhD.

Exhibit   C:   Shell Defendants documents Bates numbered SHELL-BBROWN 000112 000259

Exhibit   D:   Unpublished and State Cases

Exhibit   E:   Excerpts of Plaintiff's Deposition from February 11, 2009

3

Exhibit    F:    Excerpts of Plaintiff's Response to Interrogatories

## IV.
## STATEMENT OF THE ISSUES

The issue is whether this Court should grant Shell Defendants' Motion to Exclude when

- Dr. Kopstein relied on inapplicable refinery exposure data instead of work-specific produced data specific to Plaintiff;

- Dr. Kopstein opines as to the knowledge and "callous disregard" of the Shell Defendants, opinions that are outside the scope of expert testimony under Federal Rule of Evidence 702.

## V.
## STANDARD OF REVIEW

A plaintiff in a toxic tort case must, under Louisiana law, establish medical causation through expert testimony. *Hutchinson v. Shah,* 648 So.2d 451, 452 (La. App. 1st Cir. 1994) (attached as Exhibit D in part). For expert testimony to be admissible in federal trials, however, it must meet the scientific relevance and reliability tests set forth in *Daubert* and *Knight.* See *Daubert*, 509 U.S. at 589; *Knight,* 482 F3d 347 at 351.

In *Daubert*, the Supreme Court recognized that Rule 702 displaced the *Frye* evidentiary test of general acceptance. Instead, scientific evidence would be admissible if it would "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. However, in order to qualify as scientific knowledge, an inference or assertion must be supported by the scientific method. Evidentiary reliability, therefore, is based upon scientific validity. *Moore v. Ashland Chem. Inc*.,151 F.3d 269, 276 (5th Cir. 1998). Moreover, the expert's methodology must be scientifically valid. *See Knight*, 482 F3d at 351. The Supreme Court has provided a non-exhaustive list of factors, such as testability, peer review, potential error rate, and general acceptance to guide courts in the reliability analysis. *Daubert*, 509 U.S. at 592-595.

Rule 702's "helpfulness" standard also requires that scientific evidence be relevant, *i.e.*, there must be an adequate "fit" between the scientific evidence and the facts in the case. *Daubert*, 509 U.S. at 592-595*; see Knight*, 482 F3d at 355 (to be relevant the reasoning must be applied properly to the facts of the case); *see also Moore*,151 F.3d at 276 ("[t]o support a conclusion based on such reasoning, the extrapolation or leap . . . must be reasonable and scientifically valid") (internal citations omitted).

Although a *Daubert* analysis is centered on an expert's methodology, an expert's conclusions may also be challenged. As was stated by the Supreme Court in *General Electric Company v. Joiner*:

> Respondent points to *Daubert's* language that the "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate. . . . " But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. That is what the District Court did here, and we hold that it did not abuse its discretion in so doing.

522 U.S. 136, 146 (1997) (citations omitted).

Once expert testimony is challenged, the proponent of the expert testimony bears the burden of establishing both its relevance and reliability under Rule 702. *See Moore,* 151 F.3d at 276. *Daubert* further holds that admissibility under Rule 702 is governed by Rule 104(a), which requires the judge to conduct preliminary fact-finding and assess whether "the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-595. A trial court's *Daubert* ruling is reviewed under an abuse of discretion standard. *Joiner*, 522 U.S. at 146.

## VI.
## ARGUMENTS

### A.   Dr. Kopstein's Opinion is Unreliable and Irrelevant Because It Is Conclusory And Founded on Inapplicable Data

Dr. Kopstein, a chemical engineer, offers an opinion that Plaintiff was exposed to benzene in excess of 25 ppm.  Exhibit B, Report of Melvyn Kopstein ("Kopstein Report) at 12. This opinion is based upon the opinions of Dr. Nicas (whose opinions are separately challenged) and Dr. Kopstein's "utilization of Shell's own peer-reviewed and validated methodology to retrospectively estimate benzene exposures experienced by workers such as Mr. Brown . . . ." Exhibit B, Report of Melvyn Kopstein at 12.

The Shell studies referred to and described in Dr. Kopstein's report relate to chemical refineries.  Exhibit B, Report of Melvyn Kopstein at 8-9.  Dr. Kopstein has offered no reasoned analysis as to why such studies would be applicable to a person who worked on offshore drilling rigs.  As the undisputed evidence shows, Plaintiff never worked with pure benzene and worked outside rather than in an enclosed refinery building.  Exhibit E, Plaintiff's Depo. February 11, 2009, 40:4-20; Exhibit F, Plaintiff's Response to Interrogatory No. 13.  There is no reason to believe that Plaintiff's particular job tasks or his exposure levels, both qualitatively and quantitatively, were anything like the Shell refinery workers who were studied in the Shell refinery studies.  Importantly, Dr. Kopstein offers no reasons or analysis in support of such a conclusion.  His opinion is therefore simply his "ipse dixit" (say-so) rather than a true expert opinion.  A conclusory opinion that is the mere "ipse dixit" of an expert is no better than speculation for the purposes of a *Daubert* analysis.  *See Joiner*, 522 U.S. at 137, 146.

Dr. Kopstein makes the serious mistake of selecting the Shell refinery studies as a basis for his expert opinion even though Shell Defendants produced data that, unlike the refinery

6

studies, was specific to Plaintiff's work environment. This data was produced to Dr. Kopstein months before his report was submitted, and there is simply no excuse for him not to address this data in his analysis. Experts are regularly excluded when they "cherry-pick" data. *See In Re Bextra & Celebrex Mkt. Sales Prac. Lia. Lit.,* Cause No. M:05-CV-01699-CRB, MDL No. 1699, (N.D.Cal. November 19, 2007) (finding expert testimony inadmissible because the expert cherry-picked observational studies) (attached as part of Exhibit D); s*ee also Miller v. Pfizer*, Inc., 356 F.3d 1326 (10th Cir. 2004) (district court excluded opinion, in part because of the reliance on pre-selected evidence); *Soden v. Freighliner Corp.*, 714 F.2d 498, 505 (5th Cir. 1983) (stating that "[t]hough courts have afforded experts a wide latitude in picking and choosing the sources on which to base opinions, Rule 703 nonetheless requires courts to examine the reliability of those sources."). Because Dr. Kopstein's exposure opinion is founded upon inapplicable, cherry-picked data designed to produce a certain result, his opinion should be excluded.

**B.     Dr. Kopstein's Unfounded "Non-Expert" Opinions Should Also Be Excluded**

Dr. Kopstein also opines that Shell Defendants "obviously failed to follow specific recommendations made by [a Shell employee] in 1977 and 1988," had "callous and reckless disregard for the occupational health and safety of Mr. Brown and his co-workers and other Shell employees," and "knew of the risk of causing cancer to Mr. Brown and his co-workers…." Exhibit B, Kopstein Report at 12. Federal Rule of Evidence 702 specifically allows for expert opinions, not rank speculation about the knowledge a company had and whether or not it cared about an employee's safety. FED. R. EVID. 702. Specifically, Rule 702 allows an expert to offer an opinion based on "scientific, technical or other specialized knowledge that will aid the trier of fact." FED. R. EVID. 702.

Courts do not allow experts to opine as to legal conclusions, such as whether or not Shell Defendants' conduct constituted "recklessness" or evinced a "callous disregard." *See Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303 (5th Cir. 1985), (the expert's answer to the hypothetical question posed would simply tell the jury the result to reach and would allow the expert to voice a legal conclusion); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983) ( upheld the exclusion of expert testimony as to the legal cause of an accident); *Morris v. Equifax Info. Serv. LLC*, 2007 U.S. Dist. LEXIS 26319 (S.D. Tex. April 10, 2007) (attached as Exhibit D in part) (allowing an expert to give legal conclusions drawn from the evidence both invades the court's province and is irrelevant). Similarly, Dr. Kopstein's opinions about what Shell Defendants knew and what Shell Defendants did involve mixed questions of fact and law that are a far cry from "scientific, technical or specialized knowledge." It is also clear that these opinions are conclusory and apparently not based on a full review of the evidence since Dr. Kopstein has not reviewed Shell Defendants' produced documents or talked to any Shell Defendants witness about their actions, intent or motives.

## VII.
## CONCLUSION

Pursuant to F ED. R. E VID. 702, Shell Defendants request that Dr. Melvyn Kopstein be excluded from testifying in this case and that his expert opinions be found inadmissible.

For the reasons stated in this motion, Shell Defendants respectfully request that this Court enter an order granting this Motion to Exclude, and any other relief this Court deems just and proper.

Respectfully submitted,

/s/
Stan Perry
Texas Bar No. 15799920
Federal ID No. 12671
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2039
Telecopier: (713) 236-5455
*stan.perry@haynesboone.com*

ATTORNEY IN CHARGE

OF COUNSEL:

Jeffrey I. Mandel
Louisiana Bar. No. 20935
JUGE, NAPOLITANO, GUILBEAU,
RULI, FRIEMAN & WHITELEY
3320 West Esplanade Ave. North
Metairie, Louisiana 70002
Telephone: 504-831-7270
Telecopier: 504-831-7284

ATTORNEYS FOR DEFENDANTS
SHELL OIL COMPANY AND
SHELL CHEMICAL LP

## **CERTIFICATE OF CONFERENCE**

On February 17, 2009, Stan Perry conferred via e-mail with Reed Morgan, counsel for Plaintiff, Ben Brown to inquire whether Plaintiff would agree to the relief sought in this Motion. Mr. Morgan has not responded regarding whether he is opposed to this Motion. As such, we are treating this motion as opposed.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February 2009, a true and correct copy of the *Shell Defendants' Motion to Exclude Testimony of Plaintiff's Expert Melvyn Kopstein* was electronically filed with the Clerk of the Court and served on all parties of record using the CM/ECF System.

/s/ Stan Perry
STAN PERRY

H-767517_1.DOC