IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BEN N. BROWN, SR.                            §
                                             §
        Plaintiff,                           §
                                             §
v.                                           §
                                             §   C.A. NO. 4:08-cv-00413
SHELL OIL COMPANY, SHELL                     §
CHEMICAL, L.P, RADIATOR                      §   ADMIRALTY
SPECIALTY COMPANY, AND JOHN                  §
DOES 1 THROUGH 250, INCLUSIVE,               §
                                             §
        Defendants.                          §

## PLAINTIFF'S RESPONSE TO DEFENDANT RADIATOR SPECIALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Ben Brown, through undersigned counsel, and respectfully opposes the motion brought by defendant and states:

Plaintiff does not oppose Radiator's Motion for Summary Judgment as to the state law product liability law claims that arise under Louisiana and Texas law.

However, plaintiff strenuously opposes the Motion for Summary Judgment as it seeks a dismissal of "each and every claim advanced by Plaintiff, Ben Brown, in his First Amended Complaint and Second Amended Complaint and states:

"This is a toxic tort lawsuit…No matter how Plaintiff's claims as to Radiator and its product, Liquid Wrench, are presented, they are warnings claims, and, as such, preempted (sic) by the Federal Hazardous Substance Act ("FHSA"), 15 U.S.C.A. 1261, et seq."

I.      **PLAINTIFF'S BASIS TO MAINTAIN THIS ACTION AGAINST**
        **"RADIATOR" UNDER THE GENERAL MARITIME LAW**

Plaintiff has sued the Shell companies under the Jones Act and under the General Maritime Law for negligence as well as unseaworthiness, and for distributing defectively designed and marketed products. In addition, he sued Radiator Specialty Company ("Radiator"), for selling a defective product under general maritime law. See paragraphs 11, 24, and 27. These claims are not preempted by the F.H.S.A., and these claims go far beyond mere warnings claims.

In Moss v. Parks Corp., 985 F2d 736, (4th cir. 19930, the court held at page 738 that:

"The doctrine of preemption, the resolving of conflicts between federal and state law, flows from the Supremacy Clause of the Constitution. See U.S. Const. Art. VI, cl. 2. In _Worm v. American Cyanamid Company_, this Court held that:

Preemption may occur on two bases, the first of which turns on discovering the intent of Congress. Congress may expressly provide that federal law supplants state authority in a particular field or its intent to do so may be inferred from its regulating so pervasively in the field as not to leave sufficient vacancy within which any state can act. See, e.g., Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). (Emphasis Added). But even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it actually conflicts with federal law. See _Wisconsin Public Intervenor v. Mortier_, 501 U.S. 597, ----, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991).

The instant matter is brought under the General Maritime Law, as well as the Jones Act. Nothing in this Federal Hazardous Substances Labeling Act, [F.H.S.A.], 15 U.S.C.A. 1261, et.seq., pre-empts the obligations that Shell Oil and Shell Offshore had to Mr. Brown as a Jones Act seaman, and a seaman protected under the common law of the General Maritime Law of the United States. In fact, despite defendant's statement to the contrary, nothing in the F.H.S.A. mentions preemption. The defendant has cited no cases that support any dismissal of plaintiff's general maritime law claims for both negligence and product liability.

## II.    GOVERNING LAW

Maritime Product Liability Law claims filed on strict liability concepts are within the admiralty tort jurisdiction, and not state law. See, e.g., _East River S.S. Corp. v. TransAmerica DeLeval, Inc._, 476 U.S. 858. (1986); _Employer's Ins. Co. of Wausau v. Sewanee River Spa Lines, Inc._, 866 F. 2d 752, (5th cir. 1988).  Sewannee River held that admiralty tort jurisdiction  exists for maritime products liability claims. East River, supra adopted strict liability based on tort and on 402A strict liability.

402 A states:

"a. One who sells any product in a defective condition unreasonably dangerous to the user….is subject to liability for physical harm thereby caused to the ultimate user…if (1) the seller is engaged in the business of selling such product, and (2) it is expected to and does reach the user or consumer without substantial changes in the condition in which it was sold.

b. the rule stated in subsection (1) applies although (1) the seller has exercised all possible care in the preparation and sale of his product, and (2) the user or consumer has not bought…"

Nothing in 402A relegates Mr. Brown's claims to merely a failure to warn or failure to instruct, or otherwise properly label the product. Defendant's statement that "…[T]hey are warnings claims, and as such, preempted by the Federal Hazardous Substance Act…" is false.

Plaintiff's Second Amended And Supplemental Complaint clearly claims that "Radiator" is liable to him for distributing unreasonably dangerous products in violation of the General Maritime Law products liability laws. (See paragraph 11, 24, and 27), stating claims in both maritime negligence and products liability.

Radiator relies on Riegel v. Medronic, Inc., 128 S.Ct. 999, (2008). That case pertained to a medical device and plaintiff's state common law claims. It said nothing establishing primary jurisdiction to supplant or preempt General Maritime Law claims for negligence or for distributing or selling an unreasonably dangerous product. As stated at paragraph 39 of their motion, "the doctrine of preemption arises out of Article VI, clause 2 of the Constitution, otherwise known as the Supremacy Clause, which provides that "[t]his Constitution and the Laws of the United States…shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Cont. art. VI cl. 2. Where a Congressional intent to preempt is expressly stated, state law must yield to Congressional command."

Nothing in plaintiff's General Maritime Law claims falls under state law, and there is no Congressional intent to preempt the General Maritime Law under the F.H.S.A.

Mr. Brown denies the defendant's contention that plaintiff does not know what he was exposed to made by Radiator, as reflected below at paragraph "1" in defendant's STATEMENT OF UNDISPUTED FACTS.

### BEN BROWN'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL UNDISPUTED FACTS:

1. Denied.

   Defendant contends that Mr. Brown's testimony as to what container of Liquid Wrench he used. Plaintiff denies this contention.

   In support thereof, plaintiff refers to his deposition testimony at page 86, where he states he used this product, "Throughout his career." (page 88, lines 15-20; he used it, "Anytime we had to work on valves, to break lugs off of—or anything—any kind of small—whether it be large or small equipment, we'd spray it and give it time to penetrate and do its things because it's – you know, it was good product for that." (page 86, lines 23-25; page 87, lines 1-4.

   He testified it was used, "…(O)ff and on every day. (Page 87, lines 5-8).

   He did not state he did not know what it was, he identified the label as that which Radiator showed to him and it had defendant's skull and crossbones, exhibit 7 to the deposition.

   **Q:** I'm going to hand to you what I've marked as Exhibit 7, and it's a color photocopy of an advertisement for Liquid Wrench. I don't have a date on it. And

just ask you if you've seen a document like this before now unconnected was this lawsuit when you worked for Shell?

**A:** Yes. I've seen this—this—the writing, like Liquid Wrench, and the colored can. Uh –Huh. (affirmative).

He did say he could not recall if it was a spray on or half gallon, but it came in a metal can. (Page 88, lines 4-7).


If the product that plaintiff used did not contain benzene, one would question why it had the crossbones on it. This clearly establishes a question of fact as to what Mr. Brown was exposed, and insinuates it contained benzene, as reflected in defendant's paragraph 6, at page 3 of its motion, pertaining to its "STATEMENT OF MATERIAL UNDISPUTED FACTS."

2. Admit;

3. Admit that the manufacture stopped manufacture of the product as alleged in 1978; deny that distribution stopped then for lack of information to agree to this contention;

4. Admit;

5. Deny;

6. Admit;

7. Deny, for the reasons stated above in answer to disputed fact no. 1.

Wherefore, Premises Considered, Plaintiff prays that defendant's pre-emption Motion be denied as a matter of law with respect to his maritime product liability causes of

action, because the General Maritime law is not preempted as alleged. Plaintiff does not

oppose the dismissal of his state law claims.

Dated: June 15, 2009.

Respectfully submitted,

S. REED MORGAN
Law Office of S. Reed Morgan, P.C.
P.O. Box 38
Comfort, TX 78013
Telephone (830) 995-2464
Facsimile (830) 995-2728

And

David Jon Singelstad
David Singelstad, Attorney at Law
113 High Street
Cambridge, Maryland 21613
Telephone: (510) 368-4888
Admitted *Pro Hac Vice*

ATTORNEYS OF RECORDS FOR
PLAINTIFF


By:   /s/ S. Reed Morgan

 S. Reed Morgan
 Texas State Bar #14452300
 Federal ID #6080


## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of June 2009, a true and correct copy of the above listed document was electronically filed with the Clerk of the Court and served on all parties of record using the CM/ECF System.

 /s/ S. Reed Morgan
S. Reed Morgan