IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BEN N. BROWN, SR. § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | C.A. NO. 4:08-cv-00413 |
| § | |
| SHELL OIL COMPANY, SHELL § | |
| CHEMICAL LP, RADIATOR SPECIALTY § | |
| COMPANY, AND JOHN DOES 1 § | |
| THROUGH 250, INCLUSIVE, § | |
| § | |
| *Defendants.* § | |

**SHELL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF JOHN SPENCER'S TESTIMONY FOR LACK OF QUALIFICATION**

Defendants Shell Oil Company, Shell Chemical LP, and Shell Offshore Inc. ("Shell Defendants") file this Opposition to Plaintiff's Motion to Exclude Portions of John Spencer's Testimony for Lack of Qualification Required By Fed. R. Evid. 702 and *Daubert* (hereinafter, "Plaintiff's Motion"). *See* R. Doc. 152, 154.

**I.
OVERVIEW OF THE PROCEDURAL HISTORY**

The following is a summary of the relevant procedural history:

- January 5, 2009 — Plaintiff designates experts with expert reports, including a nine-page report by Mark Nicas, Ph.D. *See* R. Doc. 51.

- May 15, 2009 — Plaintiff's deadline to designate experts and provide expert reports *expires*. *See* R. Doc. 104.

- July 31, 2009 — Plaintiff serves a "supplemental" report for Dr. Nicas, which had been executed by the expert six weeks earlier. *See* Exhibit F, Dr. Nicas' Report Served 7/31/09. This **untimely report** is the subject of a Motion to Strike. *See* R. Doc. 162.

- August 1, 2009 — The deadline to file motions challenging experts expires per Court's Scheduling Order. *See* R. Doc. 104.

1

- August 3, 2009 — Plaintiff files a late Motion to Exclude Portions of John Spencer's Testimony for Lack of Qualification Required By Fed. R. Evid. 702 and *Daubert*. *See* R. Doc. 152.

- August 4, 2009 — Plaintiff files another late motion, this time to "Correct" his previous Motion to Exclude Portions of John Spencer's Testimony for Lack of Qualification. *See* R. Doc. 154.

- No expert depositions have been taken or scheduled. Trial is set for December 2009.

## II.
## INTRODUCTION TO THE CHALLENGE

Plaintiff Ben Brown, Sr. has asserted that John W. Spencer, CIH, CSP ("Spencer") is unqualified in his field of industrial hygiene. On that basis, Plaintiff asks this Court to exclude portions of Spencer's opinions. Plaintiff also asks this Court to exclude portions of Spencer's opinions because Spencer did not conduct a dermal exposure assessment in this lawsuit.

Plaintiff's plea is backwards, inside out, and upside down. It is Plaintiff's expert, Dr. Mark Nicas ("Nicas"), not Mr. Spencer, who is the proponent of retrospective dermal exposure modeling. Therefore, it is the Plaintiff who has the burden to substantiate the scientific reliability of Nicas' method. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

Plaintiff's Motion should be DENIED because:

| | |
|---|---|
| Δ | Spencer is imminently qualified to conduct exposure assessments and criticize others who purport to do so, but who use unreliable methods. |
| Δ | Spencer's exposure assessment methodology (not at issue in this lawsuit) is in-line with generally-accepted industrial hygiene practice, another reason why Spencer's scientific criticisms of Nicas' model are reliable. |
| Δ | Spencer did not perform a dermal dose assessment in this case because the methodology is unsound, speculative, outside of generally-accepted industrial hygiene practice, and has been judged severely under *Daubert* principles. |
| Δ | As the proponent of Brown's alleged benzene dose, Plaintiff has the burden to defend Nicas' methodology – not the other way around. **Spencer does not have to embrace an indefensible methodology in order to critique it.** |

## III.
## SUMMARY OF THE CHALLENGE

Plaintiff's Motion presents two specific challenges: (1) whether Spencer is qualified to address industrial hygiene and exposure assessments in this lawsuit; and (2) whether Spencer's opinions regarding industrial hygiene and exposure assessment are reliable and relevant.

Spencer is well qualified to address industrial hygiene and exposure assessments, and his opinions are based on a reliable, relevant, and comprehensive methodology. *See Exhibit A*, Spencer's C.V. <u>Backed by generally accepted industrial hygiene practice</u>, Spencer has explained in detail all the reasons why Nicas' modeling method is unreliable. *See Exhibit B*, Spencer's 3/6/2009 Rebuttal Report; and *Exhibit C*, Spencer's August 24, 2009 Declaration.

## IV.
## DEFENDANTS' RESPONSE TO PLAINTIFF'S CHALLENGE

**1.   Plaintiff's Motion is a Diversion Made With Hope that Nicas Can Avoid the *Daubert* Spotlight.**

Plaintiff first complains that Spencer is not qualified to assess Nicas' modeling methodology because he (Spencer) never performed a dermal absorption calculation in his 30 years as a practicing industrial hygienist. In leveling this first challenge, Plaintiff should have mentioned that Nicas also testified that during his (much more limited) career as a practicing industrial hygienist, he also never calculated a dermal exposure. *See Exhibit D*, Deposition of Mark Nicas in *Andrews v. United States Steel Corp.*, Case No. D-504-CV-2006-01258, State of New Mexico, County of Chavez, Fifth Judicial District, at 187:7-14; 188:2-7. The fact that neither side's expert has actually done this kind of guesswork in the field casts a long shadow on the reliability of Nicas' methodology. Plaintiff cannot use this fact offensively against Spencer, for it is the Plaintiff that has the exclusive burden to defend his own expert's dose modeling methodology.

3

Plaintiff next argues that Spencer's opinion is not reliable because he (Spencer) did not employ a dermal model like Nicas. Again, lagging in his duty of candor to the Court, Plaintiff fails to mention that Nicas was recently **excluded** under *Daubert* for using the same approach that he uses in the instant case. In a benzene-cancer case styled *Andrews v. United States Steel Corp.*, Nicas' opinions were excluded because "[t]he methodology utilized by Dr. Nicas to arrive at his exposure estimates was not scientifically valid, or reliable." *See Exhibit E* at ¶ 13, Court's September 16, 2008 Findings of Fact and Conclusions of Law in *Andrews v. United States Steel.*

Plaintiff wants Spencer to be limited in his expert opinion because he does not subscribe to a methodology that has been repudiated under *Daubert* principles. This is strange indeed. As Spencer explains, the Occupational Safety and Health Administration (OSHA), National Institute for Occupational Safety and Health (NIOSH), and American Conference of Governmental Industrial Hygienists (ACGIH) neither require nor recommend quantifying dermal exposures. *Exhibit B* at page 6; *Exhibit C* at page 2.

In truth, Plaintiff's motion to limit Spencer's opinions is not based on Spencer's methodology, but is based on the fact that his own expert cannot confront and survive the following type of scrutiny:

- **Neither Spencer, Nicas, nor anyone else uses dermal modeling to estimate exposures in the real world;**
- **The leading group of American industrial hygiene professionals (ACGIH) do not subscribe to dermal modeling to estimate exposures; and**
- **Nicas' flavor of dermal modeling has already been rejected under *Daubert*.**

Plaintiff's Motion is a mere diversion. By challenging Defendants' expert he hopes that Nicas can avoid the kind of *Daubert* scrutiny that left him outside the courtroom in another case.

Defendants do not have the burden of proof in this case, and Spencer does not have to defend an indefensible methodology in order to critique it. Plaintiff has is backwards and his Motion should be DENIED.

2.  **Spencer Is a Highly Qualified Professional For Exposure Assessment.**

Plaintiff contends that Spencer is not qualified to comment on Nicas' methodology because Spencer (1) merely "took some courses at the graduate level, and never completed his thesis" and (2) "has never done a dermal calculation of exposure outside of litigation." *See* R. Doc. 154-6, page 2. These are astonishing misstatements of Spencer's background, training, experience, and qualifications. Further, as explained above, Spencer does not subscribe to Nicas' modeling methodology. Plaintiff has conflated the concepts of expert qualification (FRE 702), reliable expert methodology (*e.g.,* one employed by ACGIH and practicing industrial hygienists), and unreliable methodology (*e.g.,* dermal dose modeling per Nicas).

Plaintiff continues his qualification attack by complaining that Spencer lacks a PhD and that "[h]is education is limited to a Bachelor of Science degree in Biological Sciences." *See* R. Doc. 154-6, page 2. However, Rule 702 recognizes that it is the qualifications of the witness, and not his titles that count. FED. R. EVID. 702 (an expert may be qualified by virtue of "knowledge, skill, experience, training or education," or any combination of these attributes). At most, Plaintiff's challenge goes to the weight and credibility of Spencer's testimony, not to its admissibility. *See e.g. McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2nd Cir. 1995) (caliber of expert's training, education, or experience); *Glaser v. Thompson Med. Co.*, 32 F.3d 969, 975 (6th Cir. 1994) (differences in opinions among experts in testifying expert's discipline).

Plaintiff continues a disturbing trend by taking great liberty with the facts. Spencer is a Certified Industrial Hygienist, a Certified Safety Professional, and a Certified Indoor Air Quality

Consultant. *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 11:2-18; *Exhibit B* at page 1; *Exhibit A and CV*. Spencer completed exposure assessment industrial hygiene graduate classes at George Washington University and the University of Cincinnati. *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 14:11-19. Spencer also completed two weeks of 40-hour class work from the OSHA Training Institute where OSHA inspectors and industrial hygienists are trained. *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 14:21-25; 15:1-3.

In addition, Spencer has been a practicing industrial hygienist for more than 32 years. *See Exhibits A, B, and C*. Formerly, he was with NIOSH, where he led a group of industrial hygienists conducting research for the National Occupational Exposure Survey. *Id.* He served as an industrial hygienist for the United States Coast Guard where he conducted thousands of exposure assessments of a wide range of products, including numerous benzene-containing materials. *Id..*

Spencer's knowledge, skill, training, and experience speaks for itself. FED. R. EVID. 702. He has the proper educational background and real world experience to be qualified as a person with specialized knowledge on exposure assessment. *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999) (testimony can be admitted with a reasonable indication of the expert's qualifications). Plaintiff's challenge is frivolous and should be DENIED.

    **3.**    **Prior Deposition Testimony is Fodder for Cross Exam, Not Motion Practice.**

Plaintiff further contends that Spencer is not qualified to provide opinions concerning dermal exposure analysis based on a snippet of deposition testimony from a prior lawsuit called *Bishop*. Plaintiff interprets the prior testimony for the Court, "[Spencer] tacitly admitted that he does not know how to perform mathematical modeling." *See* R. Doc. 154, ¶ 3. Plaintiff is way

out on a limb. If this is true (which it is not), then Plaintiff's counsel will have ample opportunity to explore Spencer's qualifications when he is deposed.

Plaintiff has taken the fact that Spencer does not perform dermal modeling in the field, and converted that sound professional judgment into a spurious and irrelevant attack on his qualifications. Spencer's prior testimony from a different lawsuit has nothing to do with his qualifications for analyzing and critiquing Nicas' methodology in this case.

### 4.     Misrepresenting Prior Testimony Will Not Change Spencer's Qualifications.

Again, Plaintiff's mantra is that Spencer "tacitly admitted that he does not know how to perform mathematical modeling." *See* R. Doc. 154, ¶ 3. The record shows otherwise.

While Spencer has responded to opposing experts in the context of litigation and performed dermal calculations for benzene exposure, he has never done so in his 30-plus years of actual field work because ***dermal exposure assessment is not a standard practice for industrial hygienists.*** *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 21:20-25; 22:1-4 ("When I worked for NIOSH, when I worked for the U.S. Coast Guard, [dermal calculations are] just not done, never done.); *Exhibit B* at page 6; *Exhibit C* at pages 2-8. Spencer testified in *Bishop* that he was familiar with the many variables that are associated with the dermal model, and explained that he had recently presented at a conference on the limitations of doing dermal assessments (along with researchers from NIOSH and Europe). *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 22:5-17; *Exhibit C*.

Spencer has set forth (in detail) the many uncertainties and problems with dermal exposure modeling. *See* R. Doc. 154-2, Deposition of Spencer in *Bishop*, 22:5-17 ("That's why in our business that if we are concerned about dermal does in addition to inhalation dose, we collect biological samples, blood or urine samples and have that evaluated, and that's why we do

not use a dermal calculation to determine the significance of exposure); *Exhibit B* at pages 6-11; *Exhibit C* at pages 3-14.

Plaintiff's characterization about Spencer's *Bishop* testimony is incorrect, misleading, and has nothing to do with Spencer's qualifications as an expert. For the reasons set forth above, Plaintiff's motion to exclude Spencer's testimony based on qualifications should be DENIED.

**5. Spencer's Opinions Are Based on Sound and Reliable Methodology.**

Although the title of Plaintiff's Motion suggests that he is only challenging Spencer's qualifications, his arguments are muddled with challenges regarding their reliability. Spencer's expert methodology is fully captured by his reports in this case, as well as his Declaration, all of which are attached hereto. *See Exhibits A, B, C.*

Plaintiff asserts that Spencer's methodology is unreliable because he (Spencer) did not calculate or use a dermal exposure assessment for Plaintiff, and because he did not provide the bases for his many critiques of Nicas's method. The record shows otherwise. *Exhibits B, C.*

Plaintiff's misapprehension of the burden of proof and of *Daubert* notwithstanding, Spencer's methodology is bullet-proof. Spencer explained in detail the methodology he used to prepare his reports. *See Exhibits B, C.* He started by listing the basic tools that are used in standard industrial hygiene practice to conduct an exposure assessment:

- a characterization of the environment in which the exposure occurred (including room size and ventilation rate);
- a characterization of the job and tasks conducted in that environment (including frequency and duration of exposures);
- a characterization of the products at issue (including volatility);
- a review and analysis of historical exposure data collected during tasks involving the appropriate handling of the product;

8

- evaluation of exposure data to determine whether accepted air sampling and analysis techniques and/or modeling were used to assess the magnitude of exposures; and

- a characterization of the relevant safety and health regulations and the associate exposure limits.

See R. Doc. 83, *Exhibit B* at pages 3-4.

From this framework, Spencer specifically addressed why a dermal exposure assessment is not reliable and cannot be used to calculate Plaintiff's alleged benzene exposures. This is not Spencer's raw opinion. Rather, he relies on <u>authoritative</u> and <u>universally recognized principles</u> promulgated by ACGIH, NIOSH, and OSHA.

Spencer explained that dermal exposure assessment is not a standard or generally accepted industrial hygiene practice. *Exhibit B, Exhibit C*. Among his bases for this opinion are:

1. Occupational health standards "capture" potential dermal exposures, and therefore inhalation exposure is the only route of exposure that should be retrospectively quantified;

2. ACGIH, NIOSH, and OSHA do not require or recommend quantifying dermal exposures;

3. ACGIH, NIOSH, and OSHA do not publish any method for comparing a "modeled" dermal exposure to the health standards; and

4. Methods in development to quantify dermal exposures rely on *direct measurement* of the chemical of concern or other internal markers of exposure measured in blood or urine utilizing validated methods.

Spencer also analyzed Nicas' method for modeling dermal exposures and explained the reasons why it is unreliable. *See Exhibit B, Exhibit C.* In doing so, Spencer did not nakedly assert his critique. Instead, he meticulously applied the scientific method, identifying where Nicas' model lacks reliability, and supporting his assertions with facts and references. While a full and complete recitation of Spencer's critique is found in his Declaration (*Exhibit C*), a few important examples are:

9

1. Nicas' dermal flux estimate for benzene (the rate at which benzene penetrates the skin) comes from a 50-year old experiment, and has no known error rate, no known reliability and no known reproducibility.

2. Nicas' method for modeling dermal exposures (extrapolating a flux value from pure benzene to a mixture or solvent that may contain benzene) has not been validated and there is no reproducible measure of its precision or accuracy.

3. Nicas' method for modeling dermal exposures does not account for critical environmental conditions like temperature and wind speed, as well as exposure conditions like surface area exposed and skin condition.

4. Nicas' dermal flux model ignores the fact that the rate at which a material absorbs into the skin will decrease over the time of the exposure (Fick's law of diffusion).

5. Nicas' input parameters render his modeled exposure value widely variable and inherently unreliable.

The Court should take note that Plaintiff's expert has tread this path before. Nicas uses the same methodology in the instant case as he used in the *Andrews* case. *See Exhibit E*, *Andrews* Findings and Conclusions, at ¶ 37–51. In *Andrews*, the plaintiff alleged that two hydrocarbon mixtures (gasoline and Liquid Wrench) contained benzene, and that exposure to those two mixtures caused Mr. Andrews' death. *Exhibit E* at ¶ 2-8. Nicas estimated Mr. Andrews' benzene exposure from the defendants' products by performing a dermal exposure assessment, as he has done here.

The court in *Andrews* found that unlike an inhalation model, Nicas' dermal flux model had not been validated, and that there was no peer reviewed literature validating that the modeled results would consistently match the results reached under actual test conditions. Nicas identified only one study in the *Andrews* case (Hanke et al. (1961)) that analyzed the flux for benzene in live humans. As in the instant matter, all other studies referenced by Nicas involved animals or human cadaver skin from various body parts. *Exhibit E* at ¶ 31.

After subjecting Nicas' methodology to the rigors of Daubert, the *Andrews'* court concluded that the methodology was neither scientifically valid nor reliable, and Nicas was excluded under *Daubert*. *Id.* at ¶ 37-51.

Finally, it is important to note that Spencer's critique of Nicas' methodology is not limited to the dermal model. Spencer also provided a detailed scientific critique of Nicas' methodology for estimating Plaintiff's "inhalation dose." *Exhibit B* at pages 3-5, 9. Spencer relies on the well-recognized industrial hygiene principle of a similar exposure group (SEG). As Spencer explains in his report:

> A SEG is a group of workers have the same general exposure profile for an agent because of the similarity and frequency of the task(s) they perform, the similarity of the materials and processes with which they work, and the similarity of the way they perform the task(s). (citations omitted)

*Exhibit B* at page 9.

Spencer's conclusion (that Nicas' use of laboratory worker data is inappropriate for estimating Ben Brown's exposures on a offshore platform) is not and can not be the subject of a *Daubert* motion. It is Spencer's methodology that is allegedly under scrutiny, and as shown herein, his methodology is bullet-proof. *Exhibit B, Exhibit C*.

### 6. Plaintiff's Motion Is Late And Does Not Comply With The Local Rules.

The Court's April 16, 2009 Scheduling Order established August 1, 2009 as the deadline for "any motion challenging an expert witness (only motions in limine on issues other than experts may be filed after this date)." *See* R. Doc. 104. Two days after the deadline, on Monday, August 3, 2009, Plaintiff filed his first late motion challenging Spencer. It did not comply with the local rules because it (1) did not include citations to any legal authority, (2) did not include a proposed order, and (3) did not include a certificate of conference (R. Doc. 152). *See* S.D. TEX. Local Rule 7.1 The August 3 motion had nothing attached in support.

11

On Tuesday, August 4, 2009, Plaintiff filed a "corrected" version of the earlier motion (R. Doc. 152), this time adding exhibits, a memorandum with legal authority, and some additional arguments not included in his first motion. *See* R. Doc. 154-6. Plaintiff should not be allowed to contravene this Court's deadlines and local rules. Even if the instant Motion "relates back" to August 3, 2009, it is still untimely. The Court's ORDER does not automatically provide for extensions for date-certain deadlines falling on a weekend, nor does it incorporate by reference Federal Rule of Civil Procedure 6. *See Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017-18 (6th Cir. 2005) ("By its plain language, [FRCP 6(a)] applies to the relatively common situation in which litigants are required to file papers within a given number of days following a particular event or order . . . The language of Rule 6(a) does not address situations where litigants are required to file papers on a particular, stated, calendar date."). Moreover, Plaintiff's Motion still does not include a certificate of conference.

Plaintiff's Motion is late, fails to comply with the local rules, and should be STRICKEN.

## E.
## CONCLUSION

John W. Spencer CIH, CSP is a highly qualified industrial hygienist with over three decades of experience. Spencer's methodology, used to critique Nicas' dermal exposure model, is sound. *Exhibits A, B, C*. Spencer has pointed out in his expert reports that guesswork models, like the one used by Nicas, are unreliable, with no real-world application. Many courts see it the same way. *Castellow*, 97 F. Supp. 2d at 791 (modeling is not generally accepted as a substitute for data in a causation analysis); *Allen v. Penn. Eng'g. Corp.*, 102 F.3d 194, 194, 199 (5th Cir. 1996) (when the information relied on by the expert is mere guesswork, that testimony is unreliable and should be excluded).

A district court has wide discretion to admit or exclude expert testimony. *Page v. Barko Hydraulics*, 673 F.2d 134, 139 (5th Cir. 1982). A trial judge faced with a proffer of expert testimony must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell-Dow Pharms.*, 509 U.S. 579, 592-93 (1993). The decision to admit or exclude expert testimony will be reviewed on appeal only for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).

**THEREFORE**, Shell Defendants request that Plaintiff's Motion to Exclude Portions of John Spencer's Testimony for Lack of Qualification Required By Fed. R. Evid. 702 and *Daubert* be DENIED. Further, Shell Defendants request that Plaintiff's Motion to Exclude Portions of John Spencer's Testimony for Lack of Qualification Required By Fed. R. Evid. 702 and *Daubert* be STRICKEN because the Motion is untimely, does not adhere to the Court's local rules, and for all additional relief this Court deems appropriate.

Respectfully submitted,

/s/
_____
Stan Perry
Texas Bar No. 15799920
Federal ID No. 12671
Heidi K. Thomas
Texas Bar No. 24051081
Federal ID No. 931159
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2039
Telecopier: (713) 236-5455
*stan.perry@haynesboone.com*
ATTORNEY IN CHARGE

OF COUNSEL:

Stephen C. Dillard
Federal ID No. 1067
Texas Bar No. 05868000
Brett J. Young
Federal ID No. 566989
Texas Bar No. 24042203
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

ATTORNEYS FOR DEFENDANTS
**SHELL OIL COMPANY**
**SHELL CHEMICAL LP**
**SHELL OFFSHORE, INC.**

## NOTICE OF SERVICE

I, Stephen C. Dillard, do hereby certify that a true and correct copy of the foregoing has been served on all counsel of record on this 24th day of August, 2009.

/s/Stephen C. Dillard
Stephen C. Dillard