```
 1                STATE OF NEW MEXICO
 2                 COUNTY OF CHAVEZ
 3            FIFTH JUDICIAL DISTRICT COURT
 4                      --oOo--
 5
 6   Connied Lea Gibson Andrews,
     Individually and as Personal
 7   Representative of Tommy
     Lindell Andrews, Deceased,
 8
                    Plaintiff,
 9
       vs.                    No. D-504-CV-2006-01258
10                                    Volume I
     United States Steel
11   Corporation, et al.,
12                  Defendants.
     _____/
13
14
15
16            VIDEOTAPED DEPOSITION OF
17          MARK NICAS, Ph.D, MPH, CIH
18              BERKELEY, CALIFORNIA
19                 May 9, 2008
20
21
22
23
24   REPORTED BY:  RICHARD M. RAKER, CSR NO. 3445
25   FILE NO.: 800086
```

```
 1      STATE OF NEW MEXICO
 2                    COUNTY OF CHAVEZ
 3              FIFTH JUDICIAL DISTRICT COURT
 4                       --oOo--
 5
 6   Connied Lea Gibson Andrews,
     Individually and as Personal
 7   Representative of Tommy
     Lindell Andrews, Deceased,
 8
                  Plaintiff,
 9
       vs.                       No. D-504-CV-2006-01258
10                                     Volume I
     United States Steel
11   Corporation, et al.,
12                Defendants.
     _____/
13
14
15
16         Deposition of MARK NICAS, Ph.D, MPH, CIH,
17   taken on behalf of Defendants, at Doubletree Hotel,
18   200 Marina Boulevard, Berkeley, California,
19   commencing at 9:32 a.m., May 9, 2008, before Richard
20   M. Raker, CSR No. 3445.
21
22
23
24
25
```

Page 215

1        REPORTER'S CERTIFICATE

2

3        I, RICHARD M. RAKER, CSR #3445, Certified
4   Shorthand Reporter, certify:
5        That the foregoing proceedings were taken
6   before me at the time and place therein set forth, at
7   which time the witness was put under oath by me;
8        That the testimony of the witness and all
9   objections made at the time of the examination were
10  recorded stenographically by me and were thereafter
11  transcribed;
12       That the foregoing is a true and correct
13  transcript of my shorthand notes so taken.
14       I further certify that I am not a relative
15  or employee of any attorney or of any of the parties,
16  nor financially interested in the action.
17       I declare under penalty of perjury under the
18  laws of the State of California that the foregoing is
19  true and correct.
20       Dated this 15th day of May, 2008.
21
22
23       _____
         RICHARD M. RAKER, C.S.R. No. 3445
24
25

Page 186

1  getting in through dermal absorption. So there is no
2  statement saying, And therefore the employer shall
3  limit the amount of skin contact with benzene to so
4  many minutes per day to so much surface area.
5       But, to me, the discussions showing that
6  dermal absorption can lead to an equivalent
7  inhalation exposure shows me that OSHA was cognizant
8  of the fact that dermal absorption should be
9  accounted for, although it never in the language of
10 the standard actually has a dermal absorption limit
11 to it.
12      Q.  And in that discussion in the '87
13 preamble, OSHA ultimately determined that the
14 potential dermal exposures that it was discussing
15 there were so small they'd be irrelevant?
16      A.  I'm not sure that's true.
17      Q.  Well, they were discussing it. That was
18 in the context of --
19      A.  Of .1 per -- I think they were
20 discussing it in the context of whether you needed a
21 warning for more than .1 percent benzene in your
22 product.
23      Q.  In looking at dermal exposures to
24 products with less than .1 percent benzene, OSHA
25 didn't determine that there was significant risk from

Page 187

1  those exposures, true?
2       A.  You know, I don't remember. I'm -- I
3  don't remember exactly what they said. They may have
4  said that. I don't know.
5       Q.  Maybe in another case we'll have a
6  chance to spend some more time on that.
7           During the time that you worked as an
8  industrial hygienist throughout your career, how many
9  times did you ever calculate a worker's dermal
10 exposure in the course of giving an employer advice
11 about limiting its worker's exposures?
12      A.  I don't think I ever calculated a dermal
13 exposure. It was more like, You need to prevent
14 dermal exposure.
15      Q.  You did take air-sampling results or you
16 oversaw air-sampling results during your time as a
17 practicing industrial hygienist in the '70s?
18      A.  Yeah. I took them.
19      Q.  You took them. Okay.
20          And would you ever report those to the
21 employers?
22      A.  Certainly.
23      Q.  And would you do estimates of
24 time-weighted average exposures to various chemicals
25 based upon those air-monitoring results?

Page 188

1       A.  Certainly.
2       Q.  How many times did you also tell the
3  employer, And, oh, by the way, in addition to these
4  inhalation exposures, I've also separately calculated
5  these dermal exposures your workers are getting? Did
6  you ever do that?
7       A.  I don't recall doing that.
8       Q.  In Terry Andrews' affidavit, did he give
9  you any information about whether or not the Liquid
10 Wrench his father used was from an aerosol or a
11 nonaerosol can? And you're welcome to look back at
12 it. I'm not trying to -- it's probably folder
13 number 6, would be my guess.
14      A.  Not in the affidavit. He may have had a
15 statement in the deposition. I just don't recall.
16      Q.  As you sit here right now, then, if what
17 you said earlier -- I think I interpreted it as
18 you're relying on the affidavit for your exposure
19 assessments.
20      A.  For the -- certainly for the frequency
21 of use and the amount of time and contact. Yeah.
22      Q.  Do you have an opinion as you sit here
23 now as to the relative amount of Mr. Andrews' use of
24 aerosol Liquid Wrench as opposed to nonaerosol? Do
25 you have an opinion either way?

Page 189

1       A.  No. I think we went over this
2  previously.
3       Q.  Okay. And if the facts were that
4  aerosol Liquid Wrench contained no benzene, then
5  would it be fair to say that your exposure estimate
6  for Mr. Andrews is somewhere between zero, which
7  would account for all aerosol, and a high of the
8  number you reported in your report?
9       A.  Well, I don't think it would go to zero,
10 because other people have talked about using
11 nonaerosol Liquid Wrench, so clearly that was around.
12 But it would be -- depending upon the -- if there
13 were no benzene in the aerosol Liquid Wrench and if
14 you said that there was a certain portion of
15 Mr. Andrews' Liquid Wrench use that was the aerosol,
16 then there would be a proportionate effect on the
17 cumulative prevention of exposure to Liquid Wrench.
18      Q.  Okay. I think this is my last line of
19 questions.
20          Do you recall these witnesses being
21 asked repeatedly in their depositions did they ever
22 recall seeing a skull and crossbones on the Liquid
23 Wrench cans? Do you recall those questions?
24      A.  I recall some questions of the skull and
25 crossbones.

ESQUIRE DEPOSITION SERVICES
800.770.3363